**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 8, 2011

Lyle W. Cayce
Clerk

No. 09-20500

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN SANCHEZ, also known as Pantera,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CR-93-2

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Pursuant to a written plea agreement, Juan Sanchez pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C.§ 846, § 841(a)(1), and § 841(b)(1)(A)(ii). The district court sentenced Sanchez to 210 months in prison. Sanchez appeals his sentence and conviction, arguing that the government violated the plea agreement by not standing mute at sentencing on the issue of Sanchez's role in the conspiracy. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 09-20500

I.

On April 2, 2008, Juan Sanchez signed a written plea agreement in which he agreed to plead guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(A)(ii). In his plea agreement, Sanchez waived "the right to appeal the sentence imposed or the manner in which it was determined" with the exception of "the right to appeal an illegal sentence or an upward departure from the guidelines not requested by the United States." Sanchez also waived his right to collaterally attack his conviction or sentence. In return, the government agreed, *inter alia*, "to limit the adjustment to [Sanchez's] offense level based upon his aggravating role to three (3) levels pursuant to U.S.S.G. Section 3B1.1(b)" and "to stand mute on this issue during" sentencing.

The presentence report (PSR) calculated Sanchez's base offense level to be 38. The PSR recommended a four-level aggravating role adjustment based on Sanchez's leadership position in the distribution organization, and a three-level reduction for acceptance of responsibility, which resulted in a total recommended offense level of 39. The PSR then calculated Sanchez's criminal history score to be three, establishing a criminal history category of II. Based on these recommended findings, Sanchez's resulting advisory sentencing guidelines range was 292 to 365 months of imprisonment.

At sentencing, the district court determined that, based on the plea agreement, Sanchez's base offense level should be 36, not 38, and the aggravating role adjustment should be three levels, not four. Sanchez's counsel objected to this latter conclusion, arguing the information in the PSR supported only a two-level, not a three-level, aggravating role increase. The district court then asked the government, "Do you want to respond?" Notwithstanding its agreement to stand mute, the government identified several facts in the PSR that supported the three-level adjustment. The government then stated, "Judge,

No. 09-20500

if I could make it clear, I don't want to—I'm arguing for what I agreed to in the plea agreement. I'm not arguing for more than that. I'm saying that what he pled to and what the facts state in the PSR, that is what he should be held to and not anything below that. I just want the record to be clear about that." Sanchez's counsel replied, "I don't disagree with the government's position. . . . All I'm saying is that . . . the [PSR] on its face does not . . . have sufficient information to hold him responsible at a three level adjustment. Maybe a two level, but not a three level." The district court disagreed with this assessment, explicitly identifying some of the facts in the PSR that it believed supported a three-level adjustment. It then stated, "frankly I think [Sanchez] is getting a break." Based on its findings, the district court calculated Sanchez's advisory sentencing range to be 210 to 262 months of imprisonment, and sentenced Sanchez to 210 months in prison and five years of supervised release. Sanchez filed a timely notice of appeal.

II.

Sanchez raises three issues on appeal: (1) whether his appeal waiver was knowing and voluntary; (2) whether the term "illegal sentence" in his appeal waiver is ambiguous and thus permits Sanchez to appeal his sentence; and (3) whether the government violated the plea agreement by not standing mute at sentencing on the issue of Sanchez's role in the conspiracy. We need not address the first two issues because irrespective of his appeal waiver, Sanchez may argue on appeal that the government breached the plea agreement. *See United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002) ("[W]here the government has breached . . . a plea agreement, the defendant is necessarily released from an appeal waiver provision contained therein.").

The parties agree that we review for plain error because Sanchez did not object at sentencing that the government breached its plea agreement. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009) (holding that Fed. R. Crim.

No. 09-20500

P. 52(b)'s plain error test applies to forfeited claims that the government breached a plea agreement). To prevail on plain error review, Sanchez must show (1) error, that is (2) obvious, and (3) affects his substantial rights, meaning the error "'affected the outcome of the district court proceedings.'" *Id.* at 1429 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). If the first three prongs are satisfied, we have the discretion to remedy the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration and internal quotation marks omitted).

We need not decide in this case whether the government breached the plea agreement because even assuming that it did, Sanchez's substantial rights were not affected. Sanchez has not shown that the government's assertedly improper statements affected his sentence. *See id.* at 1433 n.4 ("When the rights acquired by the defendant relate to sentencing, the outcome he must show to have been affected is his sentence." (internal quotation marks omitted)). Sanchez cites no evidence that shows he would have received a lighter sentence but for the government's statements about his role in the conspiracy. In fact, he does not even argue that the government's statements caused him to receive a harsher sentence. Instead, he makes the categorical assertion that "[t]he interest of justice and standards of good faith in negotiating plea bargains require reversal where a plea bargain is breached." This statement is directly at odds with the Court's admonition in *Puckett* that defendants in Sanchez's shoes "'must make a specific showing of prejudice'" beyond the mere failure of the government to comply with the terms of the plea agreement. *Id.* at 1433 (quoting *Olano*, 507 U.S. at 735). Moreover, the transcript of the sentencing proceeding supports the conclusion that the government's statements were inconsequential. After explaining its disagreement with defense counsel's plea for only a two-level, instead of a three-level, aggravating role adjustment, the district court commented, "frankly I think [Sanchez] is getting a break." The district explicitly

4

No. 09-20500

referenced the PSR in explaining the basis for its view. There is therefore no indication in the record that the government's statements influenced Sanchez's sentence. Sanchez cannot show prejudice.

### III.

Sanchez's conviction and sentence are AFFIRMED.